Barrett Daffin Frappier Turner & Engel, LLP                                                      BDFTE 695585
610 West 5th Street, Suite 602
Austin, Texas 78701
(512) 477-0008

Attorneys for WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE, INC., ITS ASSIGNS
AND/OR SUCCESSORS IN INTEREST

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 07-38246-H1 |
| DAVID ORLANDO COLLINS | § | |
| | § | Chapter 13 |
| Debtor | § | |

### MEMORANDUM CONCERNING THE COURT'S QUESTIONS OF APRIL 1, 2009

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

   Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc. and Americas

Servicing Company, servicing agent, (collectively "Lenders") by and through their attorneys of record,

Barrett Daffin Frappier Turner & Engel, LLP ("BDFTE"), file this Memorandum Concerning the Court's

Questions of April 1, 2009, and respectfully shows:

## I.
### INTRODUCTION

   The Court asked for briefing on two questions at the April 1, 2009 hearing on ten fee

applications[1] the Court consolidated for hearing.[2]

   A.    Where no acceleration has occurred, do the deed of trust contracts the debtors made and
         executed permit the Lenders to recover their costs incurred in participating in the

---

[1] The matters consolidated for hearing are:  07-38246 (*In re: Collins*); 08-32062 (*In re: Mayberry*); 07-38866 (*In re: Reynolds*); 07-38861 (*In re: Green*); 08-38530 (*In re: Harris*); 07-38072 (*In re: Gainous*); 07-38179 (*In re: Cruz*); 07-38332 (*In re: Spillman*); 07-38940 ( *In re: Brown*); 08-30403 (*In re: Johnson*).   At the hearing, the Court observed that it is very clear that where a lender has accelerated a note, a mortgage lender is entitled to recover its costs and expenses of enforcement, including attorney fees, under the terms of promissory notes.  Each note involved in the consolidated matters includes language to that effect and several notes were accelerated pre-petition.  Thus, the Court's questions regarding deeds of trust will not apply in every instance.

[2] Of the matters consolidated, only one 07-38246, was contested.  In the remaining cases, the Lenders either announced agreed orders or the debtors attorneys appeared to state they and their clients did not oppose the relief sought in the applications.

bankruptcy proceeding by retaining attorneys to advise them regarding the preparation of a proof of claim and the other services related to the debtor's plan of reorganization?

B.    Are the value of such tasks as matter set-up and attending to ECF filing of documents with the Court legitimately considered in assessing the reasonableness of a flat fee in connection with a debtor's bankruptcy case?

Each question resolves in favor of the Lenders here. Acceleration is not a condition precedent to recovery of the fees and expenses for participating in a bankruptcy proceeding to protect the Lenders' rights under the security instrument. None of the instruments in any way restricts the Lenders' rights to the recovery only of amounts attributable to work actually performed by attorneys. Moreover, just as hourly rates arrangements legitimately include the value of non-legal services, a flat fee legitimately includes the value of those services. There is no argument, and no evidence, that flat fee charged does not represent the market or that it was anything less than reasonable and appropriate.

## II.
## BACKGROUND

This Court has held that a creditor seeking to recover costs and expenses it incurred for legal services in connection with a debtor's bankruptcy must file a fee application under Bankruptcy Rule 2016. *In re: Padilla*, 379 B.R. 643, 654-55 (Bankr. S.D. Tex. 2007).[3] Accordingly, the Lenders filed the fee applications that the Court consolidated for hearing.

The fee applications each relate to the Lenders' participation in voluntary bankruptcy proceedings the debtors filed. Each involves a flat or fixed fee of $250.00 that the Lenders contracted to pay to their retained attorneys to provide certain services in the debtors' bankruptcy cases. The services were described in the fee applications and discussed in uncontroverted detail in the evidence. The services generally included the evaluation of legal issues relating to the preparation of proofs of claim and the

---

[3] Bankruptcy courts in many other jurisdictions have reached the opposite conclusion. *E.g.*, *In re Booth*, 2009 WL 81327, *4-5 (Bankr. E.D. Ark., Jan. 28, 2009); *In re: Padilla*, 389 B.R. 409, 436-37 (Bankr. D. Pa. 2008); *In re: Collins*, 2007 WL 2116416, *16 (Bankr. E.D. Tenn. July 19, 2007); *In re: Aldrich*, 2008 WL 4185989, *3 (N. D. Iowa, September 4, 2008); *In re: Atwood*, 293 B.R. 227, 232 (9th Cir. B.A.P. 2003); *In re: Powe*, 281 B.R. 336, 347 (Bankr. S. D. Ala. 2001); see *In re: Hudak*, 2008 WL 4850196, *7 (Bankr. D. Colo., October 24, 2008) (holding that a creditor has no obligation to routinely obtain court approval of post-petition fees for legal services and rejecting a plan that attempted to impose such requirement). The question remains unsettled by the Circuit Courts of Appeals.

debtor's reorganization plan, all to protect the Lenders' interest in the mortgaged property and security rights in the bankruptcy.

In each case, the debtors executed pre-petition a promissory note evidencing the debt secured by the mortgage.  Without exception, these notes require that the respective debtors bear all costs the lender incurs in enforcing the debt, including reasonable attorney fees, in the event the Lender accelerates the debt.[4]  In certain cases, the Lender did accelerate the debt pre-petiton.  In other cases, the notes were not accelerated before the debtor commenced the bankruptcy.

In each case, the debtors also executed a deed of trust or other security instrument.  In those instruments, the debtors made specific covenants and promises to pay principal and interest when and as due and also to provide or pay for escrow items and take care of the property.  Among other things, the covenants contain the debtors' promise to pay the Lenders costs and expenses as set out in the contract.

__Type 1 DOTs.__ [5] Of those matters involving notes not accelerated pre-petition, four(4)[6] contain the following provisions that pertain to the recovery of expenses Lenders incurred related to the debtors' petition for voluntary relief concerning attorney fees:

> 9.      **Protection of Lender's Interest to the Property and Rights Under This Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding _that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy)_, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over the Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, _then Lender may do and pay for whatever is reasonable or appropriate to protect_ Lenders interest in the Property _and rights under this Security Instrument_, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include but are not limited to: (a) paying any sums secured by a lien which has priority over the Security Instrument; _(b) appearing in court; and (c) paying reasonable_

---

[4] _In In re: Gainous_, Case No. 07-38072, the note provides uniquely that "[i]f collection on this note is made through a Probate Court or a Bankruptcy Court or other appropriate legal proceedings, or if after default this note is placed in the hands of an attorney at law for collection, the undersigned promises to pay all costs of such collection, including attorney fees, if actually incurred, not to exceed ten per centum  (10%) of the amount owing on this note at the time of filing claim hereon or date of default, whichever is earlier."

[5] For the Court's convenience, a table identifying the consolidated matters, the Type of DOT and whether the loan was accelerated is attached hereto as Exhibit "A."

[6] Three matters involving notes accelerated pre-petition also include these provisions.  In all, the trust deeds in seven of the ten matters consolidated for hearing include these provisions.

*attorneys' fees to protect* it interest in the property *and/or rights under the Security Instrument,* including *its secured position in a bankruptcy proceeding*.

14.    **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, *for the purpose of protecting* Lender's interest in the Property and *rights under the Security Instrument, including, but not limited to, attorneys' fees*, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.

**Type 2 DOTs.**  In one case the deed of trust contains the following provisions that pertain to the recovery of expenses Lenders incurred related to the debtors' petition for voluntary relief concerning attorney fees:

If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property, (such *as a proceeding in bankruptcy*, for condemnation, or to enforce laws or regulations) *then Lender may do and pay whatever is necessary to protect the value of the property or Lenders rights in the property*.  Lender's actions may include paying any sums secured by a lien which has priority over this Security Instruments, appearing in court, paying reasonable attorneys fees and entering on the Property to make repairs.

Any amounts disbursed shall become additional debt of Borrower and be secured by this Security Instrument.  Unless  Borrower and Lender agree to other terms of payment, then these amounts shall bear interest from the date of disbursement  at the Note rate and shall be payable with interest, upon notice from Lender to Borrower requesting payment.

**Type 3 DOTs.**  In two cases, the pertinent deed of trust includes the following provisions that pertain to the recovery of expenses Lenders incurred related to the debtors' petition for voluntary relief concerning attorney fees:

**7. Charges to Borrower and Protection of Lender's Rights in the Property**. . .
If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenant and agreements contained in this security instrument, *or there is a legal proceeding that may significantly affect Lender' rights in the property* (*such as a proceeding in bankruptcy*, for condemnation, or to enforce laws or regulations) *then Lender may do and pay whatever is necessary to protect the value of the property or Lenders rights in the property*, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed shall become additional debt of Borrower and be secured by this Security Instrument.   These amounts shall bear interest from the date of disbursement at the note rate, and the option of Lender, shall be immediately due and payable.

**8. Fees.**  Lender may collect fees and charges authorized by the Secretary.

III.
**ARGUMENT AND AUTHORITIES**

A.   THE DEEDS OF TRUST AT ISSUE IN THE CONSOLIDATED MATTERS AUTHORIZE THE LENDERS TO RECOVER THEIR REASONABLE EXPENSES, INCLUDING ATTORNEYS FEES, REGARDLESS WHETHER THE LENDER ACCELERATED THE DEBT PRE-PETITION.   UNDER TEXAS' ACCEPTED RULES OF CONTRACT CONSTRUCTION, THERE IS NO BASIS TO REQUIRE ACCELERATION AS A CONDITION PRECEDENT.   *IN RE: TUCKER* HAS NO APPLICATION IN THIS MATTER.

1.   **Texas rules of contract construction require courts to enforce contracts as written, not according to adages or general maxims such as the maxim that in bankruptcy liens ride and claims get paid.   It is the contract language that controls parties' rights and obligations in every case absent ambiguity.   No party claimed, and the Court did not find at the hearing that any of the deeds of trust at issue are ambiguous.**

The rules of contract interpretation in Texas are well settled and well understood.   The Court's function and concern is to give effect to the parties' intention expressed in words of their contract.   *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).   To achieve this, the Court must consider the entire writing in an effort to harmonize and give effect to all provisions of the contract.   *Id.*   The Court construes contemporaneously executed instruments associated with the same transaction together as one agreement. *In re: Tucker*, 391 B.R. 404, 409 (Bankr. S. D. Tex. 2008).   The Court must give terms used in a contract their plain, ordinary and generally accepted meaning unless the contract shows that the parties intended them in a technical or different sense.   *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1997).[7]   Contract terms are considered from a utilitarian standpoint bearing in mind the business activity sought to be served.   *Frost Nat'l Bank v. L&F Distributors, Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005).

Courts must reject a construction that renders any term meaningless and must instead give affect to every term.   *E.g.*, *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d  663, 666 (Tex. 1987) (holding that it is a fundamental rule that each part of the contract should be given effect when it will not do violence to rules of law or construction); *Coker* at 393.   If a contract's terms can be given a certain and definite meaning,

---

[7] It is perfectly appropriate for the Court to consult dictionaries to determine the ordinary and generally accepted meaning of contract terms.   *E.g.*, *Bollner v. Plastics Solutions of Tex., Inc.*, 270 S.W.3d 157, 167 (Tex. App.—El Paso 2008, no pet.); *Pratt-Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 833 (Tex. App.-Dallas 2003, pet. denied).

the contract must be enforced as written.[8]  The Court may not strike down any provision or limit any portion of the contract unless there is an irreconcilable conflict between the terms.[9]  *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1984); *Hereford v. Sharp*, 559 S.W.2d 99, 100-101 (Tex. Civ. App.—Dallas 1977, no writ).  There is no rational argument that the provisions of the notes and deeds of trust in the consolidated matters irreconcilably conflict.  No conflict exists between the ancillary enforcement provisions of the promissory notes here; no party has made that argument.[10]  Moreover, *Ogden v. Dickinson State Bank* resolves the matter, observing fundamentally that deed of trust covenants and note covenants serve different purposes and benefit different parties.  *Ogden,* at 332.

Accordingly, the Court's primary task, with respect to each deed of trust is to determine what fees and costs the Lenders may recover, specifically whether that includes the flat fee paid to the Lenders' counsel for services in connection with the bankruptcy cases.

> **2.  Applying accepted rules of construction, the deeds of trust at issue in the consolidated matters authorize the Lenders to recover their costs associated with the bankruptcy cases, including attorney fees.**

Referring to its decision in *In re: Tucker*, 391 B.R. 404 (Bankr. S.D. Tex. 2008), the Court questioned whether obtaining advice or services regarding a bankruptcy claim, preparing and filing a

---

[8] As an aid to interpreting **unambiguous** contracts with conflicting terms, Courts have developed certain secondary rules of construction for resolving apparent conflicts between contract provisions.  *E.g., Southland Royalty Co. v. Pan Am. Petrol. Co.*, 378 S.W.2d 50, 57 (Tex. 1954);  *Hereford* at 100.  **However, no resort can be made to these secondary rules to limit or ignore terms of a contract unless the terms irreconcilably conflict.**  *Ogden v. Dickinson State Bank*, 662 S.W.2d at 332; *Hereford* at 100-101 (Tex. Civ. App.—Dallas 1977, no writ).  Other secondary rules address construction to resolve ambiguities.  *Ejusdem generis* is one.  But that doctrine applies only when words of a specific and particular meaning are followed by general words and when an ambiguity exists; *it does not apply when general words are followed by specific words.*" *City of Corpus Christi v. Bayfront Assoc., Ltd.*, 814 S.W.2d 98, 104 (Tex. App.—Corpus Christi 1991, writ denied); *see Nicol v. Gonzales*, 127 S.W.3d 390, 395 (Tex. App.—Dallas 2004, no pet.); *Hussoung v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1995, no writ).  The maxim that a contract may be construed against the drafter applies **only "as a last resort" and only if** a contract is ambiguous after ordinary rules of construction leave the Court with two conflicting reasonable interpretations).  *GTE Mobilnet of South Texas Ltd. Partnership v. Telecell Cellular, Inc.*, 955 S.W.2d 286, 290 (Tex. App.—Houston [1st Dist.] 1997, writ denied); *Kincaid v. Gulf Oil Corp.*, 675 S.W.2d 250, 256 (Tex. App.—San Antonio 1984 writ ref'd n.r.e.).

[9] A Court may not struggle to create a conflict.  Just the opposite—the Court must read all parts of the contract together "striving to give meaning to every sentence, clause and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Amer.*, 972 S.W.2d 738, 741-42 (Tex. 1998).

[10] This Court in *In re: Tucker,* 391 B.R. 404 (Bankr. S.D. Tex. 2008) specifically recognized that, although construed together, the note and deed of trust attorney fee provisions applied to different situations.  *Id*. at 409.

proof of claim and obtaining advice concerning a debtor's reorganization plan are compensable under a deed of trust inasmuch as "bankruptcy law is generally about claims rather than about liens."  *Id.* at 409. This simplistic aphorism misses the point.  Whether bankruptcy is about claims or liens, or both, may be an interesting question, but it is not the question that controls the Lenders' rights or the debtors' obligations.  Rather, the Court must construe the terms of the deeds of trust to determine specifically the parties' contract undertakings.  If the Court had relied merely upon a maxim as a rule of decision, *Tucker* would have been incorrectly reasoned and decided.  *Tucker*, however, did not turn on an adage.   The Court's actual holding turned on its determination that a very specific provision in the deed of trust controlled the recoverability of attorney fees:

> If the Note or any other indebtedness secured hereby shall be collected by legal proceedings, whether through a probate or bankruptcy court or otherwise. . . Grantors agree to pay Lender's reasonable attorneys' and collection fees in the amount set forth in the Note.

*Id.* at 410.  As the Court observed, that provision expressly adopted the note's attorney fee standard as the measure for recovering attorney fees under the deed of trust.  *Id.*

Looking to the specific contracts in the consolidated cases, it is plain that the covenants and contractual rights involved are remarkably dissimilar from the contract the debtor in *Tucker* entered with a third-party tax lien purchaser.

### a.       The Type 1 DOTs.

For example, the actual terms of the clear terms of the deeds of trust in issue.  The Type 1 DOTs unmistakably provide that if a proceeding like a bankruptcy case is filed that "**<u>might</u>**" affect the Lenders' **rights under the Security Instrument**, or interest in the property, then the Lenders can do and pay **<u>whatever is reasonable or appropriate</u>** to protect their rights under the security instrument or secured position in a bankruptcy.  Those rights specifically include, **<u>but are not limited to</u>** appearing in court and paying reasonable attorney fees.   The contract also provides that the debtor is obligated to repay the Lenders such amounts as Lender has disbursed upon demand.  [See generally, DOT para. 9].  This provision of the Type 1 DOTs applies whether or not the borrower is in default at the time of bankruptcy.

Where a borrower is in default of a deed of trust covenant,[11] and there are many, at the time of bankruptcy, paragraph 14 of the deed of trust provides a broad authorization to charge a wide variety of fees for services, **including but not limited to** reasonable attorney fees.

The Type 1 DOT includes any number of specific covenants and provision which define the Lenders' rights in the security instrument.  Moreover, the deed of trust plainly obligates the debtors personally to pay amounts due when due and specifically does not make the collateral the Lenders' sole remedy.  For example, the deed of trust requires debtors to pay to Lenders all principal and interest amounts due on the debt, as well as escrow items and installments pursuant to the deed of trust.  The debtors must pay Lenders the sums of money owed when due; debtors expressly covenanted that each, as makers, would remain jointly, severally and personally liable for the sums owed absent the lender's written release. [See generally, DOT at para. 13].

To put a point on the matter, the deed of trust is not completely without recourse to the makers. Lenders are not required to look only to the property itself for recovery but can look to debtors personally, and in bankruptcy to their estate.[12]

Under Type 1 DOTs, the Lenders have a right to personally recover from the debtors, and now their Chapter 13 bankruptcy estate, those pre-petition (and post-petition) sums debtors owe.  It is this pre-petition escrow arrearage, arising under and out of the deed of trust, that the debtors seek to cure through their plan and regarding which the debtors seek a personal discharge.  Clearly, a debtor's bankruptcy might[13] significantly affect the Lender's rights under the deed of trust, including the right to be paid out of estate property without having to wait until the end of a bankruptcy to determine whether the collateral will satisfy the claim.

---

[11] In at least three of the six cases involving the Type 1 DOT, where the debt was accelerated or where an escrow arrearage existed, the debtors are plainly in default.

[12] The deed of trust makes this plain in distinguishing between co-signers and makers on the debt.  Makers, debtors here, remain personally liable while those who only co-sign the Security Instrument are not personally liable for the sums owed under the Security instrument; only their property interest is a risk.

[13] The term "might" is generally accepted to convey a notion of possibility even weaker than "may."  The American Heritage Dictionary of the English Language, 4th Ed., Houghton Mifflin Co., 2000.

The only real question for the Court is whether, under paragraph 9, obtaining claims services and filing a proof of claim under the Type 1 DOTs was reasonable or appropriate.  Under paragraph 14, the question is whether Lenders were acting to protect its rights under the deed of trust.  In ordinary English, reasonable means within the relm of common sense.   The American Heritage Dictionary of the English Language, 4th Ed., Houghton Mifflin Co., 2000.  Appropriate means generally suitable for the occasion.  *Id.*   It is hardly a subject of reasonable debate whether a party who obtains advice and services related to a proof of claim,  prepares and files a proof of claim, and obtains other advice and services regarding a debtors' plan of reorganization in a bankruptcy case involving potentially dischargeable personal contract rights is acting reasonably or appropriately to protect those rights. The Bankruptcy Code expressly provides that a creditor may file a proof of claim to preserve its rights to recover from estate property and that failure to file a claim timely could result in the loss of rights upon objection.  11 U.S.C. §§ 501-502.

Retaining attorneys in connection with the respective debtors' voluntary bankruptcy proceedings was not just reasonable for the Lenders here, it was essential.  Filing a proof of claim is no less reasonable or essential even where the claim is merely for the unpaid principal balance as of the filing date.  Since this Court decided *In re: Campbell*, 361 B.R. 831 (Bankr. S.D. Tex. 2007) *rev'd in part* 545 F.3d 348 (5th Cir. 2008), what constitutes a pre-petition claim regarding taxes has been a subject of debate.  As the Court is aware, *Campbell* holds among other things that debtors' liability for property taxes accrues under state law on January 1 each year and is therefore a pre-petition claim in the year of bankruptcy.  *Id.* at 840.  In reversing *Campbell* on other grounds, the Fifth Circuit did not address, clarify—or disturb—this feature of the Court's opinion.  Accordingly, in the year a debtor files bankruptcy, a lender, especially where the loan is non-escrowed, may have a looming pre-petition claim which may only become fixed after the debtor fails to pay.   In the event a lender is required to later pay taxes to remove a lien, a right existing under most every deed of trust, the lender could under *Campbell's* reasoning acquire a pre-petition claim.  If the lender has a proof of claim on file by the applicable bar date there is a vehicle to amend to assert that claim.  If the lender has no proof of claim on file, there is no guarantee after the bar

date that the lender would be allowed to file a claim late.  Thus, even in this instance, it is reasonable and appropriate for a lender to prepare and file a proof of claim.

       **b.**       **The Type 2 and Type 3 DOTs**.

       Those deeds of trust identified as Type 2 or Type 3 have as their essential feature the covenant that should the debtor fail to perform the covenants in the deed of trust, or should there be filed a proceeding like a bankruptcy proceeding that may significantly affect the Lender's rights in the property, then the Lender may do or pay whatever is necessary to protect the Lenders rights in the property.  The pertinent question is whether the deed of trust paragraph 7 permits the Lenders to recover the fees incurred in participating in the Debtors' bankruptcy legal proceeding.  Following the primary rules that every word must be given a meaning and given its ordinary and generally accepted meaning in a utilitarian sense in light of the business purpose involved, this analysis is straightforward.  Deed of Trust paragraph 7 provides in pertinent part that:

> [I]f there is a legal proceeding that may significantly affect Lender' rights in the property (such as in bankruptcy, for condemnation, or to enforce laws or regulations) then Lender may do and pay whatever is necessary to protect the value of the property or Lenders rights in the property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

> Any amounts disbursed shall become additional debt of Borrower and be secured by this Security Instrument.  These amounts shall bear interest from the date of disbursement at the note rate, and at the option of Lender, shall be immediately due and payable.

       A proceeding in bankruptcy is specifically enumerated as one of the proceedings that empowers the lender to do and pay whatever is necessary to protect the value of the collateral property or the lender's rights in that property.  Whether the term "whatever is necessary" includes fees paid to a law firm is easily resolved.  In common parlance, the term "whatever" means "everything and anything that," "any" and "of any number or kind."  American Heritage Dictionary of the English Language, New College Edition, Houghton Mifflin Company 1976.   The term necessary may sometimes be used to connote an imperative, or much less.  *Hilco Elec. Cooperative, Inc. v. Midlothian Butane Gas Co.*, *Inc.* 111 S.W.3d 75, 82 (Tex. 2003).  In *McCulloch vs. Maryland*, Chief Justice Marshal observed:

> If reference be had to its use, in the common affairs of the world, or in approved authors, we find that ["necessary"] frequently imports no more than that one thing is convenient, or useful or essential to another.  To employ the means necessary to an end, is generally understood as employing any means calculated to produce the end, and not as being confined to those single means without which the end would be entirely unattainable.

4 Wheat, 316 U.S. 316 (1819).   Read in the context in light of the deed of trust's expressed purpose to protect the lender in a legal proceeding like a bankruptcy, it is plain that the term "whatever is necessary" is an extremely broad covenant authorizing the Lenders to do what is reasonable and proper to protect their rights in the collateral when a debtor files a bankruptcy case, including participating in the case. The Type 2 and 3 DOTs, just like the Type 1 DOTs, obligate the debtors/makers to personally, jointly and severally pay when due the sums owed for the debt and under the express provisions of the deed of trust. The Lenders' right to protect the value of the collateral and their rights in it to sufficiently satisfy the debt if the Debtor is unable to pay surely include preserving the right to recover from the debtor's bankruptcy estate amounts personally due.  This would be particularly important where property values are prone to decline or sales/carrying costs may be high.

Participating in bankruptcy cases, particularly in a pay-all district like the Southern District of Texas, is the only rational way for a Lender to assure its recovery from the estate of amounts it is entitled to, preserving the value of the collateral and its ability to be fully paid and satisfied even should it become necessary to foreclose on the collateral.  It is equally well settled that a corporation cannot appear but through an attorney.  *E.g., Strong Delivery Ministry Ass'n v. Board of Appeals of Cook County*, 543 F.2d 32, 33 (7th Cir. 1976); *Handy Andy, Inc. v. Ruiz*, 900 S.W.2d 739, 741 (Tex. App.—Corpus Christi 1994, writ denied); *Electronic Data Sys. Corp. v. Tyson*, 862 S.W.2d 728, 737 (Tex. Civ. App.—Dallas, no writ).   Indisputably, a creditor haled into a "legal proceeding" and specifically a bankruptcy as enumerated under the deed of trust would necessarily and properly do so through counsel.  The Type 2 and Type 3 deeds of trust specifically contemplate that the Lenders would and could participate in such proceedings, and the Lenders could only do so through attorneys.  There is, therefore, no rational argument that the term "whatever is necessary" does not include costs incurred to participate in the debtor's bankruptcy proceeding.  The covenant, read reasonably and in context in light of its purpose

authorizes the Lenders to do and pay "whatever is necessary" including payments to its law firm to participate in the case on the Lenders' behalf.

**B.      The Lenders paid a flat or fixed fee for the services rendered in the consolidated matters. The value of items that would ordinarily be considered overhead is appropriately considered as a proxy in establishing the reasonableness of that fee.**

The Lenders contracted for their counsel to provide certain services described in the fee application, including but not limited to advising them concerning bankruptcy matters and the debtors' proposed reorganization plan, as well as preparing the proof of claim according to the practice and procedures prevailing in the Southern District of Texas.  As the Court knows, those practices vary from court to court, and even from judge to judge.   In the consolidated matters, the Lenders agreed to pay a flat fee of $250.00 for those services, rather than to compensate counsel on some other basis.  Courts in this judicial district and others have accepted flat fees as an appropriate basis for compensation in Chapter 13 cases considering the realities of Chapter 13 practice.[14]  *E.g., In re: Moye*, 385 B.R. 885, 892 (Bankr. S.D. Tex. 2008); *In re: Balderas*, 328 B.R. 707 (Bankr. W.D. Tex. 2005); *In re: Powe*, 278 B.R. 539, 555 (Bankr. S.D. Ala. 2002); *In re: Young*, 285 B.R. 168, 173-74 (Bankr. D. Md. 2002); *In re: McMullen*, 273 B.R. 558 (Bankr. C.D. Ill. 2001).

This Court has recognized that fixed fees, like other fees, should be governed by the marketplace, although the Court has found the market approach cumbersome in the Chapter 13 context.  *E.g.*, General Order 2004-05.  The evidence adduced at the hearing established that the flat fee charged in these cases for the range of services included is within the range of market fees.  Indeed, several debtors' counsel appeared at the consolidated hearing and so advised the Court.  Courts have held that what other attorneys charge—the market—is the most important factor in evaluating flat fees.   *E.g., In re: Pineloch Enterprises, Inc.* 192 B.R. 675, 678 (Bankr. E.D.N.C. 1996).

---

[14] Much of the Court's work has been in the context of fixed fees for debtors' counsel.  However, the principles are no less applicable where the fees creditors pay to their counsel are concerned.  The same practical realities exist— large volume, higher risk to the creditor that the debtor will not be able to satisfy its reimbursement obligation, wide variation in rates, etc.  *See In re*: Chapter 13 Fee Applications, General Order 2004-5.

In addition to that testimony, the Lenders also provided evidence of the time value for various component tasks comprising the services included in the flat fee based on notations to the case comments system Lenders' counsel maintained.  The uncontroverted hearing testimony established that the case comments system is not an exhaustive statement of all of the work that attorneys and paralegals do or time expended, but did show that the contemplated services were in fact provided.[15]  In assigning a value to all of the work components necessary to the legal services, the case comments also disclosed the tasks such as the time involved in setting up a file in the law firm's case management system.  This process and work is essential.  Without this work, attorneys and paralegals could not reasonably provide services.

The question the Court posed at trial involved whether the work in performing tasks necessary to the actual work of attorneys, although not performed by attorneys or paralegals, can appropriately be considered in evaluating the value of services under a flat fee.  The Lenders did not locate authorities specifically addressing this question.  However, the Lenders assert that it is entirely appropriate to consider all of the underlying elements of providing legal services when evaluating the reasonableness of a flat fee for such services.

Contractually, all of the deeds of trust in the consolidated matters do not limit the Lenders' ability to recover just the work actually performed by attorneys.  Instead, the deeds of trust permit recovery of expenses, including but not limited to attorney fees.   It is well settled that words such as "included" are words of enlargement and not limitation in the law.   *E.g., Kiewit Tex. Min. Co. Inglish*, 865 S.W.2d 240, 244 (Tex. App.—Waco 1993, writ denied) (holding that a contractual clause using the words "including but not limited to" was intended to expand and not limit the contractual obligation);  TEX. GOV'T CODE § 311.005 (stating that the words "includes" and "including" are terms of enlargement and not of limitation).

---

[15] Judge Bohm held in *In re: Hight*, on rehearing that in the flat fee context, it is not always necessary for attorneys to keep detailed hourly billing records to recover their fees, particularly where the attorneys and client have a reasonable commercial expectation that the fee will be a fixed fee.  Case No.  07-36683, Docket No. 91 at p. 4. What is required is that parties must present a sufficient evidentiary record to permit the Court to make an informed assessment of the nature and extent of the work involved.  *Id.* at 4-5.

Moreover, the debtors' argument in the *Collins* matter (07-38246), which prompted the Court's question, ignores the fact that the fee involved is a flat fee and not an hourly fee. More precisely, the debtor argued that the Court should treat the flat fee as if it were done on an hourly basis and parse each component of the description to determine whether that value, if expressed in terms of an hourly rate, is really an "attorney fee." This argument misses the point entirely, and misapprehends the evidence.

The question is straightforward when attorneys bill on an hourly basis. The hourly rate charged is presumed to include items that one might consider as support or overhead items. *E.g., Flint & Associates v. Intercontinental Pipe & Steel*, 739 S.W.2d 622, 626-27 (Tex. App.—Dallas 1987). Thus, courts can simply judge the hourly rate actually charged against the rates customarily charged by local practitioners. Where non-attorneys perform work that might otherwise fall to attorneys, Texas and federal courts have concluded that the work is properly part of attorney fee awards and may receive its own hourly rate. *E.g., Gill Savings Ass'n v. International Supply Corp*., 759 S.W.2d 697, 704 (Tex. App.—Dallas 1988).[16]

In evaluating flat fees, the hourly rate model is not available and so the Courts and the parties must use some proxy for evaluating a reasonable fee amount. Here, the Lenders and counsel candidly disclosed the essential tasks included in providing legal services regardless whether the tasks could be considered legal, paralegal or something else. Those tasks included setting up files in the computerized system to ensure the accuracy of the information, together with performing quality control checks of that information. Those tasks are tasks that in ordinary law firms would fall to legal assistants or to attorneys. They are not akin to secretarial services. To the contrary, the evidence at hearing established that the attorneys and case managers cannot perform legal services without completion of that work and that the individuals who perform it do so under the direction of attorneys.

---

[16] The purpose and objective of our legal system is to provide the most equitable, efficient adjudication of litigation at the least expense practicable. *Gill* at 704; *see* Tex. R. Civ. P. 1. Justice would not be served by requiring attorneys to perform tasks more properly performed by legal assistants solely to permit that time to be compensable in the event that a request for attorney's fees is ultimately submitted to the court. *Gill* at 704; *see Continental Townhouses East v. Brockbank,* 733 P.2d 1120, 1126-27 (Ariz. App. 1986). In this case the flat fee actually enhances the efficiency in providing services and allows them to be provided at lower ultimate costs.

As a proxy, an hourly rate was assigned to all the tasks—but only as a proxy to establish the value of the flat fee.  Neither the Lenders nor the firm requested that the Court award fees separately at hourly rates for that work as if it were performed by attorneys.  Whether those tasks related to file set-up, filing of necessary pleadings with the Court, or other tasks, and whether they are appropriately considered paraprofessional services or part of overhead, misses the point.  The services were necessary and had a value.

Rather than address head on the uncontroverted testimony that the flat fee charged was reasonable and customary based on all of the tasks and work that had to be performed to provide the services, the debtors in *Collins* chose tactically to call no witnesses, present no evidence of their own, and merely ask the Court to regard the flat fee as an hourly fee and parse the description of the value as if the Lenders made a separate application to be compensated for each task by the hour.  Of course, this is not the case.

In assessing the reasonable value of legal services, courts are not bound on some pedantic path that reduces all attorney fee questions to inquiries about tasks and hourly rates, hourly rates as the debtor in *Collins* suggests.  The *Johnson* factors do not impel that result.  To the contrary, the Fifth Circuit has cautioned that courts should not engage in "some meaningless exercise in parroting and answering each of *Johnson's* twelve criteria."  *Davis v. Fletcher*, 598 F.2d 469, 470-71 (5th Cir. 1979).  Instead, the court's award should reflect a reasonable assurance that the court has "arrived at a just compensation based upon reasonable standards." *Id.*   In the flat fee context, it is perfectly appropriate for creditors to candidly disclose how valuable work is being performed, whether the court regards the task as overhead or something else.  That is all that was done in these cases.

In the end, the debtor in *Collins* argues to no important end. The rates used for the proxy computation are well below what this Court has specifically observed as long ago as October 2006 are reasonable rates for bankruptcy practitioners in consumer cases.  *See In re*: Chapter 13 Fee Applications, Misc. Case No. 06-00305 at 14.  Moreover, amounts attributed to work performed by individuals with titles other than case manager (paralegal) or attorneys would generally not reduce the computation to below $250.00 even if excluded.  The Court may apply its own experience to the totality of the evidence

and determine that the modest fee charged is reasonable.  *E.g., Heliflight, Inc. v. Bell Augusta Aerospace Co.*, 2007 WL 4373259 *5  (N.D. Tex. 2007); *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).

## IV.
## RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, the Lenders respectfully request that this Court grant the fees and costs requested and for such other relief to which they may show themselves justly entitled.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP

By: /s/ Brian Engel
    Brian Engel
    Bar No. 00789279
    Steve Turner
    Bar No. 20341700
    610 West 5th Street, Suite 602
    Austin, Texas 78701
    Phone:  (512) 477-0008
    Fax:  (512) 477-1112
    SteveT@bbwcdf.com

**ATTORNEYS FOR WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE, INC., ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST**

**CERTIFICATE OF SERVICE**

By my signature below, I hereby certify that on the 21ST day of April, 2009, a true and correct copy of the foregoing document was served upon the following parties via electronic means as listed on the Court's ECF noticing system or by regular first class mail.

David Orlando Collins                    Eloise A. Guzman
8603 Chestnut Forest                     Attorney at Law
Houston, Texas 77088                     8866 Gulf Freeway, Suite 130
DEBTOR                                   Houston, Texas 77017
                                         ATTORNEY FOR DEBTOR


Andrea Collins                           David Peake
8603 Chestnut Forest                     Chapter 13 Trustee
Houston, Texas 77088                     9660 Hillcroft, Suite 430
PARTY IN INTEREST                        Houston, Texas 77096-3856

United States Trustee
515 Rusk, Suite 3516
Houston, Texas 77002




                                         /s/ Brian Engel
                                         Brian Engel

## EXHIBIT "A"

### DATA CONCERNING CONSOLIDATED MATTERS

| Case No. | Name | DOT Type | Accelerated Pre-petition? |
|---|---|---|---|
| 07-38246 | *In re: Collins* | Type 1 | |
| 08-32062 | *In re: Mayberry* | Type 1 | |
| 07-38866 | *In re: Reynolds* | Type 1 | Yes |
| 07-38861 | *In re: Green* | Type 1 | ** |
| 08-38530 | *In re: Harris* | Type 1 | |
| 07-38072 | *In re: Gainous* | Type 2 | Yes |
| 07-38179 | *In re: Cruz* | Type 1 | Yes |
| 07-38332 | *In re: Spillman* | Type 3 | |
| 07-38940 | *In re: Brown* | Type 3 | Yes |
| 08-30403 | *In re: Johnson* | Type 3 | |