Barrett Daffin Frappier Turner & Engel, LLP
610 West 5th Street, Suite 602
Austin, Texas 78701
(512) 477-0008

Attorneys for WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE, INC., ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DAVID ORLANDO COLLINS | § | Case No. 07-38246-H1-13 |
| | § | |
| RICHARD MAYBERRY AND ELIZABETH C. MAYBERRY | § | Case No. 08-32062-H1-13 |
| | § | |
| TERRANCE HARRIS AND BRENDA HARRIS, and | § | Case No. 07-38530-H1-13 |
| | § | |
| JEFFREY SPILLMAN | § | Case No. 07-38332-H1-13 |
| | § | |
| DEBTORS | § | |

### CONSOLIDATED MOTIONS OF WELLS FARGO BANK, N.A. FOR REHEARING AND TO ALTER OR AMEND THE COURT'S ORDER AND OPINION DISPOSING OF MOVANT'S APPLICATIONS FOR APPROVAL OF FEES UNDER FIXED FEE AGREEEMENT

[Case No. 07-38246, Docket Nos. 40 and 41]
[Case No. 08-32062, Docket Nos. 51 and 52]
[Case No. 07-38530, Docket Nos. 83 and 84]
[Case No. 07-38332, Docket Nos. 52 and 53]

**TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:**

WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE, INC., ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST (hereafter "Wells Fargo")[1] files its Consolidated Motions pursuant to Federal Rules of Bankruptcy Procedure 3008, 8002 and 9023 asking the Court to reconsider and amend its rulings and Memorandum Opinion and amend its judgments accordingly and respectfully shows:

---

[1] These consolidated motions are a consequence of the Court's consolidation of the matters for determination and its consolidated Opinion.

# I.
# INTRODUCTION

The Court consolidated for hearing the above-referenced matters and six others relating to the fees incurred by mortgage lenders or servicers and simultaneously heard the matters.  The particular fees involved are flat fees paid to the Wells Fargo's law firm for legal services pertaining to the respective debtors' bankruptcy cases.

The fees involved here were itemized and disclosed on the pertinent proof of claim in each case. None of the debtors and no creditors objected to any of these proofs of claim.

Wells Fargo in each case filed an application for approval of its fees as reasonable. Because this Court has held in the past that Bankruptcy Rule 2016 applies essentially to any post-petition fee a creditor seeks to recover, the fee applications followed the format generally described in that rule.[2]   The fee applications were served on the debtor, the Trustee, and secured and unsecured creditors.

Except for the *Collins* matter, no debtor filed a response or made any objection to the fee applications.

Although no party filed an answer or objection in nine of the ten cases, the Court set the referenced matters and six others (a total of ten) for simultaneous hearing.  Before the hearing, Lender's counsel contacted each Debtor's counsel regarding the applications and all counsel, except counsel in the *Collins* matter, on behalf of their respective clients agreed that the relief sought was appropriate.  The Lender's counsel so advised the Court at the outset of the April 1, 2009, hearings.  Several debtors' counsel actually appeared at the hearing to state that their clients had no objection to the applications.

---

[2] Wells Fargo disputes that Bankruptcy Rule 2016 applies to require an application to approve the instant fees but nevertheless filed the applications mindful of the Court's contrary point of view and published opinion in *In re Padilla*.  Well-reasoned authorities in many jurisdictions support the Lender's position, although no Circuit Court of Appeals has yet considered the question. *E.g.*, *In re Booth*, 2009 WL 81327, *4-5 (Bankr. E.D. Ark., Jan. 28, 2009); *In re Padilla*, 389 B.R. 409, 436-37 (Bankr. D. Pa. 2008); *In re Collins*, 2007 WL 2116416, *16 (Bankr. E.D. Tenn. July 19, 2007); *In re: Aldrich*, 2008 WL 4185989, *3 (N. D. Iowa, September 4, 2008); *In re Atwood*, 293 B.R. 227, 232 (9th Cir. B.A.P. 2003); *In re Powe*, 281 B.R. 336, 347 (Bankr. S. D. Ala. 2001); see *In re Hudak*, 2008 WL 4850196, *7 (Bankr. D. Colo., October 24, 2008) (holding that a creditor has no obligation to routinely obtain court approval of post-petition fees for legal services and rejecting a plan that attempted to impose such requirement).

Despite the absence of any answer or objection, or any adversary, the Court directed Wells Fargo to proceed with evidence.  Wells Fargo adduced without objection extensive evidence regarding the reasonableness of the fees sought.  One of Wells Fargo's counsel, Steve Turner, testified as to the work performed and offered the ultimate opinion that the fees which were the subject of the applications were reasonable and necessary to protect Wells Fargo's interests under its pre-petition contracts with the Debtors.

At the hearing, the Court requested briefing on certain questions.  Lender provided the briefing. No debtor, including the debtor in *Collins*, provided any briefing.  The Court's memorandum opinion followed.

Wells Fargo appreciates the Court's attention and consideration of the matters, but respectfully urges that the Court erred in important respects in these four matters and now asks the Court to reconsider and alter those rulings.[3]

In particular:

A.      The Court erred in construing the deeds of trust to mean essentially that the Lender cannot recover attorney's fees unless those fees are directly to "protect the lender's collateral under the deed of trust" and to enforce the note. Slip Op. at 11.  The quoted paraphrase does not appear in any of the deeds of trust.  The deeds of trust are contracts like any other, containing a panoply of covenants that may be enforced against the property and the debtor.  The actual language in the deeds of trust establishes unequivocally that the lien created in each case secures the performance of the covenants under the deeds of trust.  The services provided plainly were directed to that purpose.  In any event, preparing and filing a proof of claim, reviewing proposed plans to ensure correct treatment and the other services about which testimony was adduced, are acts to the protect Lenders' interest in their collateral.

---

[3] Wells Fargo files these consolidated motions to alter the Court's orders and to extend the deadlines for filing a notice of appeal.  By including only certain reasons the Lender believes sufficient to entitle it to the requested relief, the Lender does not waive, and specifically preserve, its right to raise additional points of error on appeal.

**II.**
**ARGUMENT AND AUTHORITIES**

A.   THE COURT SHOULD RECONSIDER ITS RULING DETERMINING THAT THE LENDER MAY ONLY RECOVER ATTORNEY'S FEES INCURRED TO PROTECT **BOTH** "AN ENFORCEMENT OF A PROVISION OF THE DEED OF TRUST *AND* A PRESERVATION OF THE PROPERTY."

1.   **The term "and" used in paragraphs 9 and 14 of the deeds of trust in the *Collins*, *Harris* and *Mayberry* matters does not establish that any costs incurred must be *both* to protect a Lender's interest in the property *and* rights under the Security Instrument.  To the contrary, in the English language the coordinate conjunction, "and," usually means just the opposite.**

The deeds of trust in the *Collins*, *Mayberry* and *Harris* matters are the same:

9.   **Protection of Lender's Interest to the Property and Rights Under This Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding *that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy)*, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over the Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, *then Lender may do and pay for whatever is reasonable or appropriate to protect* Lender's interest in the Property *and rights under this Security Instrument*, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include but are not limited to: (a) paying any sums secured by a lien which has priority over the Security Instrument; *(b) appearing in court; and (c) paying reasonable attorneys' fees to protect* its interest in the property *and/or rights under the Security Instrument*, including *its secured position in a bankruptcy proceeding*.

14.   **Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, *for the purpose of protecting* Lender's interest in the Property and *rights under the Security Instrument, including, but not limited to, attorneys' fees*, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. (emphasis added)

The Court's opinion regarding *Collins* does not mention the language in paragraph 9.  The Memorandum Opinion in the *Mayberry* and *Harris* matters does not address paragraph 14.  With regard to the *Collins* matter, the Court's opinion finds no ambiguity regarding the use of the word "and" and holds that the conjunction establishes necessary conditions that must "both" be satisfied before fees may be charged to the debtor. With regard to *Mayberry* and *Harris*, the Court expresses confusion resulting

from the use of the word "and" and "and/or" in successive clauses in the sentence comprising paragraph 9 and pronounces the matter an ambiguity.

Implicit in the Court's construction of paragraph 14, and its expressed confusion about paragraph 9, is the proposition that the term "and" necessarily links the terms it conjoins as necessary conditions. Stated another way, the Court reasoned that the word "and" necessarily means "both."

That is not, however, the ordinary usage in English or the ordinary grammatical use of a conjunction.   The term's meaning in common parlance, to be used in construing contracts, is quite different.  For example, in *Oliver v. Oliver*, 149 S.W.2d 540, 542 (Ken. 1941), the Kentucky Supreme Court said this of the term "and":

> From a grammatical standpoint it is only necessary insofar as the argument here is presented to give meaning to the coordinate conjunction "and," which in law has the same meaning it carries in common parlance, "having no inherent meaning" standing alone, but deriving its force from what comes before and after. "In its conjunctive sense it is used to conjoin a word with a word, a clause with a clause, or sentence with a sentence, expressing the relation of addition or connection, and signifying that something is to follow in addition to that which precedes." Its use implies "that the connected elements must be grammatically coordinate, as for example where the elements preceding and succeeding the use of the words refer to the same subject matter: *** While it is said that there is no exact synonym of the word in English, it has been defined to mean 'along with,' 'also,' 'and also' 'as well as,' 'besides,' 'together with.'" 3 C.J.S., And, 1067.

The Texas Court of Criminal Appeals observed 90 years ago in *Alexander v. State* that the term "and" is not a word of technical meaning and is to receive, in the law, the same meaning it carries in common parlance. 204 S.W. 644 (Tex. Crim. App. 1918) (observing that the term has no inherent meaning but is merely a colorless particle deriving meaning or force from what comes before and after). One of the recognized uses of "and" is to refer to "either or both" of two alternatives, when "or" might be interpreted as referring to only one or the other. *Aerospatiale Helicopter Corp. v. Universal Health Services, Inc.*, 778 S.W.2d 492, 501-02 (Tex. App.—Dallas 1989, writ denied).

The Memorandum Opinion charges that Wells Fargo's construction of the deeds of trust involves a "sleight of hand" intended to convert the term "and" to the term "or" in order to "take away" the acceleration requirement of the note, referencing an example from the Lender's Joint brief.  First,

construing the term consistently with the dictionary definitions, authorities, grammatical principles, and common parlance, is not a "sleight of hand."

The Court's confusion regarding paragraph 9 and contention concerning paragraph 14 are easily resolved by assigning to the term "and" its ordinary and accepted meaning and function in English as connoting "together with," "in addition to," and "either or both.."  Read properly in that fashion, paragraph 9 and paragraph 14 make perfect harmonious sense.  It is black letter law that a court must accept a meaning that harmonizes every provision of a contract if possible. *E.g., Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663,666 (Tex. 1987).  That is the very object of contract construction under Texas law and the Court erred in declining to do so. *E.g., Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968).

>    **2.      The proposition that enforcing the provisions of the deed of trust and permitting Wells Fargo to recover reasonable fees for participating in a bankruptcy case "takes away" the acceleration requirement under the note is mistaken.**

The notion that enforcing the deed of trust when a bankruptcy is filed would "take away" provisions of the note is just fundamentally mistaken.  The note and deed of trust address different matters entirely.  Although construed together as one agreement, the instruments decidedly do not serve the same purpose.  It is black letter law that a deed of trust lien functions merely to charge a right against property that is also payable by a debtor personally. It is in the same sense that a judgment lien or landlord's lien allows a creditor to charge debts against property.  The right to charge property may be created by contract or operation of law.  The "lien" created by the deeds of trust is contractual, but the result is the same.  The "lien" is not the underlying right.  That arises under covenants, or judgments, or statutes and the like.  Rather the "lien" is the legal device that permits the underlying right to be enforced against property.

Those "rights" in the property include Wells Fargo's rights that arise under the Security Instruments, as each plainly provides.  The Memorandum Opinion characterizes the deeds of trust as

requiring actions to "protect the property" and states that "a lender's interest in the collateral is limited to its lien securing the note." Slip Op. at 8. This is mistaken. It completely contravenes the plain language in the deeds of trust, which secure all obligations that arise or will arise under the deeds of trust themselves and the notes. Moreover, the statement speaks of liens as if they are a "thing" unto themselves. The debts that arise in the contractual relationship are the "thing" that the lien makes chargeable against collateral. Nothing supports the notion that the covenants in the deeds of trust are enforceable as a charge on the property only if the notes are accelerated. Indeed, the deeds of trust establish the opposite, and they are not in conflict with the note. Under the deeds of trust, consequences flow from the commencement of a bankruptcy that may, but do not necessarily depend on the note. That those consequences differ from the consequences that would follow from acceleration of the debt to enforce the promissory note presents no issue. A court may not ignore or decline to enforce clear contractual terms unless an irreconcilable conflict between terms exists. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1984).

The operative contract language in the deeds of trust provides that if there is a proceeding that *might* significantly affect Wells Fargo's rights under the deeds,[4] by definition including a bankruptcy, then Wells Fargo may pay reasonable attorneys' fees to protect its rights under the security instrument, or, in the case of the *Spillman* deed of trust, rights in the property. The right to recover attorney's fees is triggered by the commencement of the bankruptcy proceedings, not a default under the notes. It is actually the Court's reasoning that eliminates rights expressly granted in the pre-petition contract.

   **3.     A bankruptcy proceeding is clearly one in which Wells Fargo's rights to charge debts against the property might be significantly affected, and Wells Fargo's participation in the proceeding absolutely protected Wells Fargo's rights to charge loan obligations against the property.**

---

[4] The *Spillman* deed of trust is slightly different but to the same effect. That deed of trust provides that "This Security Instrument secures to the Lender: . . . (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument, and (c) the performance of Borrower's **covenants and agreements under this Security Instrument** and the Note." These are, of course, among Wells Fargo's rights in the property. Upon the commencement of the bankruptcy case, the deed of trust authorizes Wells Fargo to incur reasonable attorneys' fees to protect those rights, the funds disbursed becoming debts created by the deed of trust , owed by the debtor, and chargeable against the property.

The memorandum opinion mostly avoids the two controlling questions:

a.  Are the debtors' bankruptcy cases proceedings that could significantly affect Wells Fargo's rights under the security instruments, or in the *Spillman* case, its "rights in the Property?"

b.  Was participating in the bankruptcy proceedings by filing proofs of claim, reviewing plans to assure proper treatment of claims, working with debtors' counsel and the other services Wells Fargo obtained reasonable or appropriate to protect those rights?

The answer in each instance is fundamentally "yes." First, each deed of trust by definition makes a bankruptcy case one that might significantly affect Wells Fargo's protected rights to charge against the property debts owed by the debtor. When contracting parties provide a definition in a contract, the court is bound to use that definition and may not substitute its own—or otherwise rewrite contracts in the guise of interpretion. *E.g., Tenneco, Inc. v. Enterprise Products Co.*, 925 S.W.2d 640, 646 (Tex. 1996). And it is clear in any case that a bankruptcy proceeding is one which might significantly affect Wells Fargo's rights in the property.

The memorandum opinion glosses over the second question by reasoning that a "lender need not participate in the bankruptcy process to preserve its lien rights." This is a superficially correct statement, but it misses the point. A lien exists so that lenders can look to the property for satisfaction of the debtor's obligations. Under the deeds of trust here, those obligations are joint and several and with recourse. It is well settled in this Circuit and Judicial District that those obligations are at risk of modification through the Chapter 13 process. For example, where a secured creditor fails to participate in connection with a Chapter 13 proceeding of which he had notice, and allows a plan to be confirmed without objection, the principles of *res judicata* may operate to modify the secured creditor's rights in spite of section 1322(b)(2).

In *In re Turner-Mayo*, the Court analyzed the interaction between section 1322(b)(2) and section 1327 (the Bankruptcy Code's analog to common law *res judicata*). 2007 WL 484614 at *3-5 (Bankr. S.D. Tex., Feb. 8, 2007). The Court concluded that a plan which modified the secured mortgage

creditor's rights under its pre-petition contract was incontestable if not appealed where the creditor

simply relied on 1322(b)(2) and did not file an objection to the confirmation. *Id.*

> In this regard, the Court observed that:

> [I]t is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous. As this court said in *In re Pence,* 905 F.2d 1107, 1109 (7th Cir.1990), a creditor is not entitled to stick its head in the sand *and pretend it would not lose any rights* by not participating in the proceedings. *See also* *In re Andersen,* 179 F.3d 1253, 1257 (10th Cir.1999) ("A creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty of protecting its interests); *In re Szostek,* 886 F.2d 1405, 1414 (3d Cir.1989) (stating that creditors must take an active role in protecting their rights).

*Id.* (emphasis added). The Court's holding is consistent with settled Fifth Circuit authorities on the issue.

*E.g., Sun Finance Co. v. Howard*, 972 F.2d 639, 642 (5th Cir. 1992) (holding that a Chapter 13 plan may

not reduce a secured mortgage claim or invalidate a lien without notice to a secured creditor, but may

change all manner of other contractual rights related to the terms underlying a lien).  Where a creditor

participates in the confirmation process, any of its rights, including the amount of its claim or the validity

of its lien, modified by the confirmed plan will be enforced as modified according to the principles of *res*

*judicata*. *See Republic Supply Corp. v. Shoaf*, 815 F.2d 1046, 1049-50 (5th Cir. 1992) (holding that a

confirmed plan that included relief beyond the bankruptcy court's authority to award was nevertheless

*res judicata* such that the relief awarded, although without legal authority, bound creditors who did not

object).   Whether the Fifth Circuit has delivered its final word on the application of *res judicata* in

Chapter 13 proceedings is an open question.   Courts around the nation reach different conclusions

concerning the scope of *res judicata*, but nearly all hold that modification of some pre-petition contract

rights through a plan not objected to, but of which the creditor had notice through the filing of the

Chapter 13 proceeding will be binding.  *E.g., In re Hale*, 359 B.R. 310, 316 (Bankr. E.D. Wash. 2007)

(stating that a plan that specifically states it will modify the claim or the lien may be binding under *res*

*judicata* principles if it clearly so states and the creditor receives notice); *In re McDonald*, 336 B.R. 380,

383 (Bankr. N. D. Ill. 2006) (holding that a plan not objected to that provided for an incorrect arrearage

was *res judicata* as to that arrearage and the bank was therefore precluded from enforcing its lien through foreclosure based on the debtor's refusal to pay the pre-petition difference); *In re Thaxton*, 335 B.R. 372, 374-75 (Bankr. N.D. Ohio 2005) (holding that a confirmed plan modifying contract rights is binding under *res judicata* despite section 1322(b)(2)); *In re Nale*, 239 B.R. 235, 239 (Bankr. D. Colo. 1999) (holding that *res judicata* bound a creditor who did not object to a confirmed plan that treated the creditor's secured mortgage claim as completely unsecured).

The varying authorities regarding the effect of a plan confirmed without objection—even if its terms are not permitted by section 1322(b)(2), impels secured lenders to participate in the bankruptcy process and review bankruptcy plans and proceedings to preserve their rights. It is no answer to say that under current Fifth Circuit authorities, the plan process may only affect some rights chargeable against the property. The contention in the Memorandum Opinion regarding the Code proves too much—or too little—depending on perspective. Either way, it is mistaken.

Of course, all things that may affect the debtor's obligations regarding the debt may affect the creditor's rights in the collateral, which is security for all of those obligations. All of the deeds of trust in the instant matters require the debtors to pay escrow items, to insure the property, to pay taxes, to keep the property in repair and sundry other matters. Those obligations and Wells Fargo's rights do not arise from the note but from the deed of trust itself, and those "rights" are enforceable against the collateral and the debtor. If the debtor does not pay amounts due, or is allowed to modify the rights through the plan confirmation process, then the creditor's rights in the property are impaired in the sense that the collateral must carry a greater burden than it otherwise would to fully satisfy the obligations secured by the lien. Every amount that a creditor cannot collect severally from the debtor increases the relative risk that the value of the lien will be insufficient to pay the secured debt and relatively impairs a creditor's rights in the property.[5] This concern is very real where property values are declining, for example. Indeed, it appears just looking to the debtors' estimates on the schedules filed, whether the loans in issue

had any equity at the time of filing is doubtful.  Conversely, where the creditor receives the full stream of principal, interest, escrow and the like out of a debtor's income as the parties to the loan originally contemplated, the creditor's security position in the collateral is comparatively better.

To say that a debtor's bankruptcy proceeding cannot affect a creditor's security rights because section 1322(b) (2) exists is an error.  The aphorism is belied by the robust body of law holding that section 1322(b) (2) gives way to section 1327's finality principle except in narrow circumstances.

**3.      In this District, the Court's holding in *Campbell v. Countrywide Home Loans, Inc.* impels creditors to file proofs of claim and otherwise participate in proceedings in bankruptcy**

*Res judicata* is not the only potential risk to a creditor's lien rights.  The proof of claim itself protects those rights in the property, especially after this Court's holding in *Campbell v. Countrywide Home Loans, Inc.*, 361 B.R. 831 (Bankr. S. D. Tex. 2007).

This presents a real problem for secured creditors in light of the Court's holding in *Campbell v. Countrywide Home Loans, Inc.*,  There the Court held that a claim for taxes in the year of bankruptcy are a pre-petition claim no matter when they are paid, although a debtor's obligation to maintain contract compliance requires the debtor to pay escrow installments.  Whether a loan is escrowed or not, a lender to a bankrupt debtor will not know whether or how much it may have pay in taxes out of its own funds to remove a priority tax lien until after the end of the year in which the bankruptcy is filed.  What the lender does know, however, is that the payments in excess of the funds actually received from the debtor during that year will be a pre-petition claim under *Campbell*.  Unfortunately for the creditor, it will usually be true that the bar date to file proofs of claim has passed.  Although there is no bankruptcy rule that compels acceptance of a late-filed claim where none was filed, the bankruptcy rules do provide for the amendment of claims already filed.

One of the consequences of declining to file a proof of claim is that a creditor could lose important rights to recover tax amounts it paid from the debtor.  This is especially true under the current regime where the bankruptcy code requires rapid confirmation.  To avoid the possible adverse consequences of not filing a proof of claim, secured lenders are compelled to prepare and file proofs of

claim.  Without filing such a proof of claim, a creditor is at risk of having the value of its lien impaired to

the extent of amounts it could not collect from the debtor.  This is another example of the way in which

an ordinary bankruptcy proceeding can significantly affect a creditor's rights in collateral property.

It is certainly appropriate for a creditor to prepare and file a proof of claim and to participate in

the plan process to make certain its rights in the collateral property are not impaired and that the value of

the collateral to satisfy the secured obligations is preserved by ensuring that sums payable by the debtor

out of income are not discharged.  Moreover, the "Trustee pay" provision established by the local rule in

this district requires a secured mortgage creditor to participate in the plan confirmation and claims

process.  The Trustee disburses post-petition payments based on the claim and the local rules purport to

require a mortgage creditor to apply payments as provided for in a plan post-confirmation.  Chapter 13

Trustee Procedures for Administration of Home Mortgage Payments, Adopted September 29, 2005 as

amended December 20, 2007.   In addition, the local rules purport to preclude, by making void, any

adjustments to the mortgage payment amount, for escrow or any other reason, absent conformance to the

rule.  *Id.*  The procedures also purport to extinguish any "claim against the estate *or* the debtor for fees

and charges unless made within 60 days of the Trustee's annual report."  Such claims are claims that

would otherwise be enforceable against the collateral property.   These procedures and the developing

jurisprudence in this District make clear that a secured creditor's claim against the collateral for loan fees

and charges incurred post-petition are the direct object of modification by the bankruptcy itself.  *In re*

*Sanchez*, 372 B.R. 289, 304 (Bankr. S.D. Tex. 2007) (holding that a creditor's posting of fees to a

mortgage account without seeking court approval precludes the charging of those fees against the

property); *In re Padilla*, 379 B.R. 643, 658-59 (Bankr. S. D. Tex. 2007) (same).

Not only are secured lenders impelled to file proofs of claim, it is entirely appropriate for

creditors to retain the services of attorneys to prepare and review them, and to advise them regarding

bankruptcy matters.  Many courts have held, including court's in this district, have held that proofs of

claim are filed under penalty of perjury.  Moreover, it is unclear in this district and others what courts

will require attached to proofs of claim under Bankruptcy Rule 3001. In the current environment, it is simply wrong to argue that preparing and filing proofs of claim is a simple "task" as the Memorandum Opinion suggests.

The Memorandum Opinion's characterization of the services provided in these cases as not directed to "protect any interest in the collateral" is mistaken. On the facts, it is clear that the purpose of participating in the bankruptcy is to ensure that the extent of the lien and obligations arising under the promissory note and deeds of trust are not affected by the proceedings. The notion that a direct challenge to the existence of a lien through an adversary proceeding is required before "rights in the property" or "rights under the security instrument" might be affected overlooks the law and the reality of bankruptcy for creditors.

The Memorandum Opinion avoids dealing with the precise language in the deeds in favor of characterizations that essentially rewrite those provisions. It is a fundament of contract law that this manner of construing contracts is prohibited. *E.g., Tenneco v. Enterprise Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). It also misapprehends the nature of bankruptcy proceedings to say that fees for participating in bankruptcy proceeding are not recoverable, because it turns out in retrospect that nothing bad ultimately happened to the lender's rights in the property and under the security instruments. The test is whether Wells Fargo's decision to participate in the bankruptcies was reasonable and appropriate under the circumstances. The foregoing discussion outlines some of those circumstances.[6]

### III.
### RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Wells Fargo requests respectfully that the Court reconsider its prior order and amend the orders to grant Wells Fargo the fees sought pursuant to its proofs

---

[6] Wells Fargo also asserts respectfully that it was fundamentally unfair to Wells Fargo to treat the fee application hearings essentially as adversary proceedings but without all the protections of the rules regarding adversary proceedings. No debtor and no creditor disputed Wells Fargo's construction of the instruments in 9 of the 10 matters. Instead, all debtors' attorneys for the contracting parties conceded Wells Fargo's entitlement to the fees sought. Wells Fargo was entitled to rely on those defaults and agreements in preparing for the hearings.

of claim and applications. Wells Fargo requests such other and further relief to which Wells Fargo may show itself justly entitled.

<div style="margin-left: 40%;">

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP


By: /s/ Brian S. Engel
    Brian S. Engel
    TBA# 00789279
    610 West 5th Street, Suite 602
    Austin, Texas 78701
    Phone:  (512) 477-0008
    Fax:     (512) 477-1112
    Email:  BrianE@bbwcdf.com

ATTORNEYS FOR WELLS FARGO BANK, N.A.

</div>

<div style="text-align: center;">

CERTIFICATE OF SERVICE

</div>

By my signature below, I hereby certify that on the 18th day of June, 2009, a true and correct copy of the foregoing document was served upon counsel of record and the Debtor, Debtor's attorney and U.S. Trustee via electronic means as listed on the Court's ECF noticing system or by regular first class mail.

<div style="margin-left: 40%;">

/s/ Brian S. Engel
Brian S. Engel

</div>